# Court of Appeals
## Tenth Appellate District of Texas

---

10-25-00219-CV

---

Stacy Olvera,
Appellant

v.

Lonnie Jackson,
Appellee

---

On appeal from the
82nd District Court of Falls County, Texas
Judge Bryan F. Russ, Jr., presiding
Trial Court Cause No. CV41229

---

JUSTICE SMITH delivered the opinion of the Court.

## MEMORANDUM OPINION

Stacy Olvera appeals from a take nothing summary judgment rendered against her in her personal injury suit against Lonnie Jackson. In three issues, Olvera contends the judgment does not dispose of all claims against Jackson and summary judgment was not appropriate because she raised genuine issues of material fact as to each element of her causes of action. We affirm.

## BACKGROUND

Olvera was walking alone down County Road 220 in Falls County when she was attacked and severely injured by a group of dogs. The dogs dragged her to the end of a driveway at 647 County Road 220, a residence owned by Jackson. Olvera's friend, Lacy Lavin, who was on her way to pick up Olvera, saw Olvera lying on the ground surrounded by seven to ten dogs. Lavin took Olvera to the hospital.

Olvera sued Jackson for strict liability, negligence, negligent handling, negligence per se, gross negligence, and intentional infliction of emotional distress. Jackson, who does not reside at the property, but leases it out, filed a no evidence motion for summary judgment seeking judgment on all claims Olvera asserted in her Original Petition. Jackson also filed a traditional motion for summary judgment asserting that, as an out-of-possession landlord he does not have control of the premises where the dog attack purportedly happened. Therefore, he cannot be held liable for negligence, negligent handling, gross negligence, or strict liability. He also asserted that the negligence per se claim fails because the incident did not occur within the city limits of Marlin. As summary judgment evidence, Jackson presented his deposition and a statement he made to his insurance company. Olvera filed a response to the motions for summary judgment and attached as evidence her

affidavit, Jackson's deposition testimony, Jackson's statement to his insurance company, Lavin's deposition testimony, and Olvera's medical records.

About three weeks before the summary judgment hearing, Olvera filed her First Amended Petition, alleging all causes alleged in her Original Petition and adding claims for negligent undertaking, negligent activity, and premises liability. On the day of the hearing on the motions for summary judgment, Olvera filed her Second Amended Petition in which she repeated the claims asserted in her First Amended Petition, except she dropped her claim for negligence per se, and she added a claim for negligent security. At the hearing, the court heard arguments from each side and then granted summary judgment for Jackson. On the same day, the trial court signed a written judgment that Olvera take nothing against Jackson. This appeal ensued.

## MORE RELIEF THAN REQUESTED

In her first issue, Olvera contends the trial court granted more relief than requested. After Jackson filed his motions for summary judgment, she amended her petition twice to add new claims.[1] She asserts that, since Jackson

---

[1] In her brief, Olvera references her First Amended Petition in which she added three new causes of action. On the day of the summary judgment hearing, Olvera filed her Second Amended Petition in which she dropped one claim and added one more new claim. There is no indication in the record that leave to file the Second Amended Petition was requested or granted, or that Jackson objected to it. *See* TEX. R. CIV. P. 63. This petition added a cause of action for negligent security based on the same facts as the previously alleged negligence causes of action. Thus, this claim is inherently related to the previously pleaded negligence claims, did not substantially alter the posture of the case, and did not unfairly prejudice Jackson. *See Hart v. Moore*, 952 S.W.2d 90, 96 (Tex. App.—Amarillo 1997, pet. denied). Under these circumstances, and where there is nothing in the record to lead us to conclude the Second Amended Petition was not considered, we may presume the trial court considered Olvera's

did not address her new claims in his motions, granting summary judgment on those claims was error.

**Applicable Law**

If the plaintiff amends her petition to add new causes of action after being served with the defendant's motion for summary judgment, the defendant will ordinarily need to file an amended or supplemental motion to address the newly pled causes of action. *See Richards v. Transocean, Inc.,* 333 S.W.3d 326, 329-30 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (op. on reh'g). However, if the defendant has conclusively disproved an ultimate fact or element which is common to all causes of action alleged, or the unaddressed causes of action are derivative of the addressed cause of action, an amended motion may be unnecessary. *See Wilson v. Davis*, 305 S.W.3d 57, 73 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

**Analysis**

In the portion of his no evidence motion for summary judgment that is pertinent to Olvera's first issue, Jackson addressed Olvera's causes of action for negligence, negligent handling, and gross negligence. He asserted that identification of and ownership of the dogs who attacked Olvera are foundational elements of all theories of negligence arising from dog bite cases.

---

Second Amended Petition. *See Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex. 1988). Therefore, we will address the causes of action asserted in Olvera's Second Amended Petition.

He further asserted that, to be held liable, an out-of-possession landlord must have actual knowledge of dangerous propensities and presence on the leased property of a particular dog or dogs and have the ability to control the premises. Accordingly, he alleged there is no evidence that Jackson had actual knowledge of dangerous propensities of the particular dogs that attacked Olvera because no evidence exists regarding whether those dogs were strays, owned by a third-party neighbor, owned by Jackson's tenant, owned by other individuals, or were wild dogs. He further alleged that there is no evidence that Jackson retained the ability to control the premises. In other words, Jackson argued that there is no evidence that he owned the dogs that attacked Olvera.

After Jackson filed his motions for summary judgment, Olvera added causes of action for negligent undertaking, negligent activity, negligent security, and premises liability, all based on the same facts as the causes alleged in her Original Petition. Each of the new causes of action is a form of negligence. *See Vance v. Hurst Joint Venture LP*, 657 S.W.3d 141, 149 (Tex. App.—El Paso 2022, no pet.) (held that premises liability is a special form of negligence). The threshold inquiry in a negligence case is whether the defendant owed a legal duty to the plaintiff. *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Jackson's argument that there is no evidence of who owned the dogs is essentially an argument that there is no

evidence that he owed a legal duty to Olvera. This argument is equally applicable to the negligence claims asserted in Olvera's Original Petition and the claims for negligent activity, premises liability, and negligent security asserted in her Second Amended Petition. *See Wilson*, 305 S.W.3d at 73.

Regarding the negligent undertaking claim, the inquiry is whether the defendant undertook to perform services the defendant knew or should have known were necessary to protect the plaintiff. *See Vance*, 657 S.W.3d at 156. In his no evidence motion, Jackson asserted there is no evidence that he knew of the dangerous propensities of the particular dogs that attacked Olvera. This argument is applicable to the negligent undertaking claim because, without knowing the dangerous propensities of the dogs that attacked Olvera, Jackson could not have known actions were necessary to protect Olvera. Therefore, it was not necessary for Jackson to file an amended or supplemental motion for summary judgment to address the new causes of action. *Wilson*, 305 S.W.3d at 73. We overrule Olvera's first issue.

## SUMMARY JUDGMENT

In her second issue, Olvera contends the trial court erred in granting Jackson's no evidence motion for summary judgment because Olvera presented more than a scintilla of evidence in support of each challenged element of her

claims for negligence and strict liability.[2]  Specifically, she asserts that she offered evidence that the dogs had dangerous propensities, Jackson had actual knowledge of the dogs' dangerous propensities, Jackson was the possessor of the dogs, and the dogs were the producing cause of her injuries.

**Standard of Review**

We review a grant of summary judgment de novo.  *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015).  After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that no evidence supports an essential element of the nonmovant's claim or defense.  TEX. R. CIV. P. 166a(a)(2), (b)(3)(B).  The motion must specifically state the elements for which no evidence exists.  *Id.* R. 166a(b)(2)(D); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).  A properly filed no-evidence motion shifts the burden to the nonmovant to present evidence raising a genuine fact issue supporting each element contested in the motion.  TEX. R. CIV. P. 166a(h)(3); *Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.,* 663 S.W.3d 569, 576 (Tex. 2023); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

---

[2] By complaining only about the summary judgment granted to Jackson on her claims for negligence and strict liability, Olvera has waived appellate review as to the summary judgment granted to Jackson on her claim of intentional infliction of emotional distress.  *Ontiveros v. Flores*, 218 S.W.3d 70, 71 (Tex. 2007) (per curiam).  Additionally, Olvera dropped her claim for negligence per se by failing to include it in her Second Amended Petition.  *See Bos v. Smith*, 556 S.W.3d 293, 306 (Tex. 2018) (held that amended pleadings supersede prior pleadings, and any claim not carried forward in an amended pleading is deemed dismissed).

A genuine issue of material fact exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Id*. We review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Timpte Indus., Inc.*, 286 S.W.3d at 310.

**Applicable Law**

The common law doctrine of negligence consists of the elements of a legal duty owed by one person to another, breach of that duty, and damages proximately resulting from the breach. *Phillips*, 801 S.W.2d at 525. The threshold inquiry in a negligence case is duty. *Id*. The plaintiff must establish both the existence and violation of a duty owed to the plaintiff by the defendant to establish liability. *Id*. The nonexistence of a duty ends the inquiry into

whether negligence liability may be imposed. *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998).

To recover on a claim of strict liability for injury by a dangerous domesticated animal, a plaintiff must prove: (1) the defendant was the owner or possessor of the animal; (2) the animal had dangerous propensities abnormal to its class; (3) the defendant knew or had reason to know the animal had dangerous propensities; and (4) those propensities were a producing cause of the plaintiff's injury. *Bolton v. Fisher*, 528 S.W.3d 770, 777 (Tex. App.—Texarkana 2017, pet. denied).

**Discussion**

In his no-evidence motion for summary judgment, Jackson asserted there is no evidence that: he was the owner or possessor of the particular dogs; the particular dogs had dangerous propensities abnormal to their class; he knew or had reason to know of dangerous propensities or of the presence of the particular dogs that attacked Olvera; those propensities were a producing cause of Olvera's injury; he retained the ability to control the premises; he acted intentionally or recklessly; his conduct was extreme and outrageous; his actions caused Olvera severe emotional distress; or the attack occurred within Marlin's city limits.

In her response to Jackson's motions for summary judgment, Olvera argued that: Jackson was the property owner; he had possession and control of the premises; he was the owner of the dangerous dogs; his personal dog was involved; he had actual knowledge of the presence of dangerous dogs; and he did not use ordinary care. She asserted that she raised genuine issues of material fact as to each element of her causes of action. Olvera attached numerous exhibits in support of her response.

Our focus is on the question of the identity of the dogs that attacked Olvera. In his deposition, Jackson stated that, some time before the attack on Olvera, he stopped by his rental property. The tenant was not there, but her belongings were still in the house, and she had three dogs in the yard, one brown, shaggy dog and two black dogs. They were regular mutts that he described as between small and medium sized. He testified that the tenant would come back to the property to feed and take care of her dogs. He explained the back yard is fenced in, but the gate was left open. He stated that other dogs used to be there and he was not sure who owned the dogs. He said the tenant probably had about eight dogs when she lived there but also said he did not know how many dogs his tenant had. He clarified that there may have been more than eight dogs present, with other dogs mixed with the tenant's dogs. He testified that a neighbor's dogs mingled with the tenant's dogs. Also,

there are stray dogs and wild dogs that have been dumped in the area. While he owns a dog, a Boxer, he denied owning any of the roaming dogs. He never saw Olvera and does not know if the dogs on the property were involved in the attack.

Olvera presented Jackson's recorded and transcribed conversation with a representative of his insurance company regarding the attack. In the statement, recorded several months after the attack, Jackson stated that the tenant had eight or more dogs, just mutts. He said her dogs once attacked his Boxer. He explained that there are neighborhood dogs that sometimes roam around there. He summed it up by saying, "[i]t ain't proven that them the same dogs that got her."

Olvera's affidavit, which was signed three weeks before the summary judgment hearing, was included as summary judgment evidence. Olvera explained that she was walking down County Road 220, and when she was in front of the property located at 647 County Road 220, three small to medium dogs ran out from that property and attacked her. Then, several big dogs came running from that property and surrounded her. They bit her, jumped on her, pushed her, and pulled her to the ground. While she was fighting for her life, she saw a little, fat Boxer dog that was biting her thigh. She stated that she later learned this dog was Jackson's personal pet. When her friend, Lacy

Lavin, arrived the dogs ran back into the tall grass on the property located at 647 County Road 220.

Olvera also presented the transcription of Lacy Lavin's videotaped deposition. When she drove up, Lavin saw Olvera on the ground with dogs attacking her. When she got out of the car, the dogs ran into the tall grass next to the driveway on the property. She said there were seven to ten dogs, some puppies and some big dogs. She saw kennels under the carport and blue pails of water. She thought someone was actively feeding and watering those dogs. She assumed some dogs belonged to that house because of the kennels and water buckets. But she does not know who owns the dogs. She explained that, in Marlin, where they are known for dog fighting and breeding dogs, people drop dogs everywhere, anywhere they want to. She said some of the dogs looked like they were part pit bull and one had a lot of fur like a Great Pyrenees mix. She saw two brindle-colored puppies, about three or four months old. When asked, she said she did not see a Boxer in the pack of dogs.

The record shows that Olvera was viciously attacked by seven to ten dogs that, at the time she was walking past a home owned by Jackson, were on that property. The witnesses gave vague descriptions of some of the dogs. The evidence shows that some of the dogs could have belonged to Jackson's tenant, some could have belonged to the neighbors, and some could have been wild

dogs that were dumped there by previous owners. While Olvera stated that a Boxer attacked her, there is no evidence that it was the Boxer that belonged to Jackson. Additionally, there is no evidence that Jackson knew his pet dog had dangerous propensities abnormal to its class. Accordingly, there is no evidence identifying the specific dogs that attacked Olvera. It follows that there is no evidence identifying the owners of the unidentified dogs that attacked her.

Claims Based in Negligence

The threshold question in any cause of action based in negligence is the existence of and violation of a duty. *Phillips*, 801 S.W.2d at 525. Without identifying the specific dogs, it is impossible to identify the dogs' owners, those who would have a duty to control the dogs. *See Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010) (negligent activity is based on affirmative, contemporaneous conduct by owner that caused injury); *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992) (premises liability cause of action is based on actions of owner/operator); *Smith*, 307 S.W.3d at 776 (cases involving claims of inadequate security are treated as premises liability cases); *Allen ex rel. B.A. v. Albin*, 97 S.W.3d 655, 660 (Tex. App.—Waco 2002, no pet.) (cause of action for negligent handling of an animal requires proof defendant was owner or possessor of the animal). There is no evidence identifying the dogs or who owned them.

In her Second Amended Petition, Olvera alleged a cause of action for negligent undertaking. She set out the elements of that cause of action, which involves a scenario where the defendant undertook to render services that it knew or should have known were necessary for the plaintiff's protection. *See Elephant Ins. Co., LLC, v. Kenyon*, 644 S.W.3d 137, 151 (Tex. 2022). Olvera did not, however, in her petition or brief on appeal, specify what services Jackson allegedly undertook to render.[3] As explained above, the dogs that attacked Olvera have not been identified. It follows that there is no evidence that Jackson knew of the dangerous propensities of the particular dogs that attacked Olvera. Without knowledge of the dangerous propensities, Jackson could not have known actions were necessary to protect Olvera. Therefore, there is no evidence that Jackson undertook to render services that he knew or should have known were necessary for Olvera's protection. *See id.*

Olvera also alleged a cause of action for gross negligence. Without negligence, there can be no cause of action for gross negligence. *See Wright v. E.P. Operating Ltd. P'ship,* 978 S.W.2d 684, 687 (Tex. App.—Eastland 1998,

---

[3] On page 10 of her brief, under the second issue, Olvera asks if a property owner can ignore vicious dogs on his property of which he has knowledge to avoid liability. In the summary of her argument in her brief, Olvera asserts that Jackson allowed dangerous dogs to populate his property and allowed them to roam free. In argument to the court at the summary judgment hearing, Olvera's counsel complained that Jackson did not evict his tenant or call authorities to have the dogs removed. Rather than undertakings, these sound like assertions of omissions. Liability for negligent undertaking cannot be predicated on an omission. *Kenyon*, 644 S.W.3d at 152. Although, this was not raised in Jackson's motions for summary judgment and is not a basis for our decision.

pet. denied). Because none of Olvera's negligence causes of action survived the no evidence motion for summary judgment, her cause of action for gross negligence also fails. *Id.*

Strict Liability

To recover on a claim of strict liability for injury by a dangerous domesticated animal, Olvera must prove Jackson was the owner or possessor of that animal. *See Bolton*, 528 S.W.3d at 777. As explained above, there is no evidence identifying the dogs that attacked Olvera and therefore there is no evidence of the identity of the owner of those dogs.

Conclusion

In his no evidence motion for summary judgment, Jackson asserted there is no evidence of the identity of the specific dogs that attacked Olvera and therefore no evidence of the identity of the dogs' owner. He also asserted he did not have knowledge of the dangerous propensities of those specific dogs. Olvera brought forward less than a scintilla of evidence regarding the identity of the dogs, the dogs' owner, or Jackson's knowledge of the dogs' dangerous propensities. *See Chapman*, 118 S.W.3d at 751. Accordingly, Olvera did not raise a genuine issue of material fact sufficient to defeat the no evidence motion for summary judgment. *Id.* We overrule Olvera's second issue.

CONCLUSION

The trial court's summary judgment disposed of all causes of action alleged by Olvera. The trial court did not err in granting Jackson's no evidence motion for summary judgment. We need not reach Olvera's third issue in which she attacks the grant of Jackson's traditional motion for summary judgment. *See* TEX. R. APP. P. 47.1.

We affirm the trial court's judgment.

STEVE SMITH
Justice

OPINION DELIVERED and FILED: July 2, 2026

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Affirmed
CV06

